1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10

ELEAZAR SANTOS, individually, and
on behalf of all others similarly situated,

Case No. 2:24-cv-01281-AB-SSC

11
12

Plaintiff,

**ORDER GRANTING PLAINTIFF'S
MOTION TO REMAND**

13

v.

14
15
16

THE PICTSWEET COMPANY, a
Delaware corporation; EXPRESS
SERVICES. INC. DBA EXPRESS
PROFESSIONAL SERVICES, a
Colorado corporation; and DOES 1
through 10, inclusive,

17

Defendants.

18
19

Before the Court is Plaintiff Eleazar Santos' ("Plaintiff") Motion for Order

20

Remanding Action to State Court ("Motion," Dkt. No. 20). Defendant The Pictsweet

21

Company ("Defendant") filed an opposition (Dkt. No. 22) and Plaintiff filed a reply

22

(Dkt. No. 25). For the following reasons, the Motion is **GRANTED**.

23

**I.      BACKGROUND**

24

Plaintiff initiated this action in the Superior Court of California, County of

25

Santa Barbara on January 10, 2024 against Defendants The Pictsweet Company and

26

Express Services, Inc. d/b/a Express Professional Services. *See* Compl. (Dkt. No. 1-2).

27

Defendant employed Plaintiff from May 2022 to July 2022. Compl. ¶ 13. Plaintiff

28

alleges that Defendant failed to pay wages for all hours worked, provide meal and rest

1

periods, pay final wages, issue accurate wage statements, indemnify employees for expenditures, and produce requested employment records. Compl. ¶ 14. Plaintiff asserts nine causes of action, individually and on behalf of other current or former hourly or non-exempt employees of Defendant in California during the class period for various violations of California's Labor Code and Unfair Competition Law.

On February 15, 2024, Defendant removed the action to this court on the basis of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). *See* Notice of Removal ("NOR," Dkt. No. 1). On March 15, 2024, Plaintiff moved to remand the action.

## II. LEGAL STANDARD

A defendant may remove a civil action filed in state court to federal court when the federal district court has original jurisdiction over the action. 28 U.S.C. § 1441(a). A removing defendant bears the burden of establishing federal jurisdiction. *See Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). To meet this burden as to the amount in controversy, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014) (citing 28 U.S.C. § 1446(c)(2)(B)).

CAFA provides federal courts with original jurisdiction over class actions in which (1) the parties are minimally diverse, (2) the putative class has more than 100 members, and (3) and the aggregated amount in controversy exceeds $5 million. 28 U.S.C § 1332(d)(2). "[N]o antiremoval presumption attends cases invoking CAFA." *Bridewell-Sledge v. Blue Cross of Cal.*, 798 F.3d 923, 929 (9th Cir. 2015).

Only "when the plaintiff contests, or the court questions, the defendant's allegation" must the defendant submit evidence to establish the amount in controversy by a preponderance of the evidence. *Id.* at 89 (citing 28 U.S.C. § 1446(c)(2)(B)); *see Ibarra*, 775 F.3d at 1195; *Harris v. KM Industrial, Inc.*, 980 F.3d 694, 699 (9th Cir. 2020) ("When a plaintiff mounts a factual attack, the burden is on the defendant to

2

show, by a preponderance of the evidence, that the amount in controversy exceeds the $5 million jurisdictional threshold."). The plaintiff may submit evidence to the contrary. *Ibarra*, 775 F.3d at 1198 (citing *Dart Cherokee*, 574 U.S. at 89). Courts may "consider . . . summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Fritsch*, 899 F.3d at 793. "An affidavit or declaration used to support or oppose a motion [for summary judgment] must . . . set out facts that would be [but not necessarily are] admissible in evidence . . . ." Fed. R. Civ. P. 56(c)(4).

## III.   REQUEST FOR JUDICIAL NOTICE

A court may take judicial notice of facts not subject to reasonable dispute where the facts "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Under this standard, courts may take judicial notice of "undisputed matters of public record," but generally may not take judicial notice of "disputed facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001). Public records, including documents on file in federal court, are appropriate for judicial notice. *See Harris v. County of Orange*, 682 F.3d 1126, 1132–33 (9th Cir. 2012); *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007).

Both parties request the Court to take judicial notice of various complaints or orders from other cases. (*See* Dkt. Nos. 21, 23, 26). The Court **GRANTS** the parties' requests for judicial notice, as the documents are public records appropriate for judicial notice. *See Harris*, 682 F.3d at 1132.

## IV.   DISCUSSION

Plaintiff argues that the Court lacks subject matter jurisdiction because Defendant has failed to demonstrate that the amount in controversy exceeds $5 million as required by CAFA. In assessing the amount in controversy, courts first look to the allegations in the complaint. *Ibarra*, 775 F.3d at 1197. Courts can accept a plaintiff's good faith allegation of the amount in controversy. *Id*. But if the "plaintiff's complaint

does not state the amount in controversy, the defendant's notice of removal may do so." 28 U.S.C. § 1446(c)(2)(A); *Dart Cherokee*, 574 U.S. at 84.

Here, the Complaint does not allege an amount in controversy. *See* Compl. Because Plaintiff contests the amount in controversy, Defendant must provide evidence to support its calculations. To satisfy that requirement, Defendant filed declarations from Christopher J. Archibald, counsel for Defendant (Archibald Decl., Dkt. No. 5); Rick Holdren, Executive Vice President, Manufacturing and Logistics and Chief Operating Officer for Defendant (Holdren Decl., Dkt. No. 7); Jonathan Wilson, labor economist and consultant of Resolution Economics ("ResEcon") (Wilson Decl., Dkt. No. 24-3); and Robert E. Boone III, counsel for Defendant (Boone Decl., Dkt. No. 24-2).

### A.     Defendant's Evidentiary Support

Plaintiff challenges Defendant's evidence to support its amount in controversy. Plaintiff argues that Defendant's proffered declaration of Rick Holdren does not evidence the variables assumed in Defendant's amount-in-controversy calculation, including the alleged violation rates or the percentage of class members affected. *See id*. at 7. Plaintiff contends that the documents referenced by Holdren do not support the asserted violation rates. *Id.* For example, Plaintiff contends that the daily time records or pay records referenced in the declaration would not provide any information regarding a specific violation rate for unpaid wages resulting from off-the-clock violations. *Id*. In his Reply, Plaintiff further argues that the Boone declaration sets forth Defendant's assumptions by improperly relying on certain discovery responses provided by Plaintiff in a separate representative action in state court that Plaintiff filed against the defendants under the Private Attorneys General Act ("PAGA"). *See* Reply at 3-4.

The Court finds that the Holdren and Boone declarations are appropriate "summary-judgment-type" evidence. Holdren declares that he is familiar with the operations of Defendant and its business records and provides his declaration based

upon his personal knowledge and his review of the business records under the penalty
of perjury. This is sufficient. *See Torrez v. Freedom Mortg., Corp.*, 2017 WL
2713400, at *3 (C.D. Cal. June 22, 2017). A defendant is "not required to comb
through the records to identify and calculate the exact frequency of violations."
*Salcido v. Evolution Fresh, Inc.*, 2016 WL 79381, at *6 (C.D. Cal. Jan. 6, 2016).
"Defendant has no obligation . . . to support removal with production of extensive
business records to prove or disprove liability and/or damages." *Ray v. Wells Fargo
Bank, N.A.*, 2011 WL 1790123, at *6 (C.D. Cal. May 9, 2011). Furthermore, the
Wilson declaration is based on the expert's review of Defendant's time and payroll
records and ResEcon's own calculations. *See* Wilson Decl.; Oppn at 5-6. Similarly,
Boone provides facts based upon his personal knowledge and review of relevant
records, which suffices to support the basis for Defendant's assumptions. The Court
addresses Defendant's specific assumptions taken from the separate action below.

### B.    Defendant's Assumptions

Defendant alleges that the amount in controversy is $11,606,531.20 and submits
its calculations for the estimated damages. Plaintiff challenges, among other things,
Defendant's assumptions regarding the number of affected class members and the
frequency of violations.

A removing defendant is entitled to make "reasonable assumptions" about
violation rates to estimate the amount in controversy. *Arias v. Residence Inn by
Marriott*, 936 F.3d 920, 922 (9th Cir. 2019). It is inappropriate to demand exact
certainty from a defendant in their calculations of the amount in controversy. *Jauregui
v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022). "Where
a defendant's assumption is unreasonable on its face without comparison to a better
alternative, a district court may be justified in simply rejecting that assumption and
concluding that the defendant failed to meet its burden." *Id.* at 996.

Here, Defendant's primary source of evidence in support of its violation rates
and the resulting amount in controversy of $11,606,531.20 is a separate state court

action previously filed by Plaintiff under the PAGA. Defendant argues that Plaintiff is attempting to "avoid" CAFA jurisdiction through "artful pleading" based on Plaintiff's previous PAGA action. *See* NOR ¶¶ 42-48; *see also* Archibald Decl. That action was captioned *Eleazar Santos, on behalf of the State of California and other aggrieved persons, Plaintiff v. The Pictsweet Company, a Delaware corporation; and Does 1 through 10, inclusive, Defendants*, Case No. 23CV02857, and is referred to by Defendant and herein as "*Santos I*." *See id.* ¶ 1. Defendant claims that throughout the *Santos I* complaint, Plaintiff alleged that "Defendants engaged in a 'pattern and practice' of 'systemic' wage and hour violations that occurred 'regularly.'" *See id.* (citing *Santos I* Compl., ¶ 18). Defendant asserts that Plaintiff's substantive wage and hour allegations in this case are identical to *Santos I* and argues that Plaintiff "cites the same California Labor Code sections and asserts the same set of purported 'facts' constituting the alleged violations." *See id.* ¶ 45. Defendant therefore bases its assumed violation rates on Plaintiff's discovery responses in *Santos I*, the *Santos I* complaint, pre-suit demand letters, and the Complaint. *See* Opp'n at 1, 6-7.

Defendant further states that its methodology uses Plaintiff's work experience and violation rates which Defendant contends Plaintiff has expressly alleged as "typical and illustrative" of all class members. *See* Opp'n at 3. Defendant relies on the *Santos I* complaint where Plaintiff alleges that his "experience working for Defendant was typical and illustrative" to argue that Plaintiff "concedes the type, frequency, and duration of violations he experienced are the same as or similar to violations suffered by each class member." *Id.* Defendant claims that throughout the *Santos I* complaint, Plaintiff alleged that "Defendants engaged in a 'pattern and practice' of 'systemic' wage and hour violations that occurred 'regularly.'" *See* NOR ¶ 44 (citing *Santos I* Compl., ¶ 18). Defendant insists that Plaintiff only alleges the same purported violations occurred "at times" with respect to the "Class, or some of them" in the present action "for no other reason but to attempt to avoid removal." *See id.* ¶¶ 47-48.

For example, to calculate the unpaid minimum wages at stake, Defendant relies

6

on Plaintiff's discovery response in *Santos I* where he stated that he could not recall all of the exact dates he was required to work off-the-clock, but "recalls working off-the-clock, from June 19, 2022 to June 25, 2022, 1.5 hours per day" and that he "regularly worked off-the-clock." *See* NOR ¶¶ 46, 50; Archibald Decl. Ex. 3, at 5-6. Defendant assumes a 100% violation rate for off-the-clock work based on the "assertion that [Plaintiff] worked off-the-clock <u>each day</u> during the week of June 19, 2022." *See id.* ¶ 56 (emphasis in original). Defendant looks to Plaintiff's time records which show that he worked three days that week. *See id.*; Holdren Decl. ¶ 11. Defendant thus estimates that Plaintiff worked off-the-clock 4.5 hours during that week (1.5 hours x 3 days). *See* NOR ¶ 56. Defendant then argues that Plaintiff alleged in *Santos I* that Defendant engaged in "a pattern and practice of not paying Plaintiff and the Aggrieved Employees for minimum wages." *See id.* ¶ 51 (cleaned up). While Defendant notes language in the Complaint which states that Defendant "at times" failed to pay Plaintiff and "the Class, or some of them," for all hours worked, Defendant contends that this allegation "indicates that all class members could conceivably recover [and] the amount in controversy reflects the maximum recovery [Plaintiff] could reasonably recover." *See id.* ¶¶ 52-53. Defendant therefore assumes that Plaintiff "regularly" worked off-the-clock 3 days per week during a normal five-day workweek, to arrive at a 60% violation rate (three out of five days per week). *See id.* ¶ 56. Defendant takes two-thirds of 4.5 hours to estimate 1 hour of off-the-clock work per violation, and thus calculates 3 hours of unpaid wages per week per putative class member.[1] *See id.* ¶ 57. Defendant multiplies the number of workweeks

---

[1] Defendant also asserts that based on the *Santos I* complaint's allegation of a "pattern and practice," Defendant "would be justified" in assuming at least one hour of unpaid minimum wage per workweek. *See id.* NOR ¶ 57 n.2 (citing several cases for the proposition that one hour of unpaid minimum wage per week is a reasonable assumption where the plaintiff alleges that the defendant engaged in a "pattern and practice" of wage violations). However, the Complaint in this action does not allege a "pattern and practice" of wage violations.

since July 16, 2019 (36,487) by the 3 hours unpaid minimum wages per week and the average California minimum wage since July 16, 2029 ($13.90). *See id.* ¶ 58; Holdren Decl. ¶ 3. This amounts to at least $1,521,507.90 in unpaid minimum wages. *See* NOR ¶ 58. Defendant then doubles this amount to account for liquidated damages pursuant to Section 1194 of the California Labor Code. *See id.* ¶ 59. This results in a total amount in controversy of $3,043,015.80 for unpaid minimum wages and liquidated damages. *See id.*

First, as Plaintiff points out, Defendant provides no case law supporting its artful pleading argument or its reliance on the *Santos I* complaint to establish the amount in controversy. *See* Mot. at 8. Defendant's assumptions based on the *Santos I* complaint are unreasonable because they are based on language not found in the Complaint, the operative pleading in this case. Defendant contends that in *Santos I*, "Plaintiff did not attempt to avoid removal by artful pleading because removal was not an option due to it being a PAGA case." *See id.* ¶ 44. Yet, Defendant relies on allegations, discovery responses, and the PAGA pre-suit notice from *Santos I*—a separate PAGA action—to assume violation rates in calculating the amount in controversy for CAFA jurisdiction in this case. Defendant cannot have it both ways. The PAGA claims from the *Santos I* complaint could not be used to establish CAFA jurisdiction in *Santos I*, nor can they now be used to support the validity of violation rates used in calculating the amount in controversy to establish the CAFA jurisdictional amount. *See, e.g., Yocupicio v. PAE Grp., LLC,* 795 F.3d 1057, 1062 (9th Cir. 2015); *Figueroa v. Logisticare Sols., LLC*, No. SACV2001112DOCJDE, 2020 WL 6043211, at *2 (C.D. Cal. Oct. 10, 2020).

Second, the Complaint uses limiting language indicating that the alleged violations occurred "at times" and only to "some of" the class members. *See Davis v. Empire Chauffeur Service, LTD*., No. 2:23-cv-07968-MEMF-SSC, at *10-13 (C.D. Cal. Mar. 18, 2024). Thus, Defendant's assumptions are unsupported by the Complaint and facially unreasonable. Furthermore, Defendant relies on allegations of

1  Plaintiff's work experience being "typical and illustrative" of the class members to
2  assume that Plaintiff's individual violation rates correspond exactly with those of
3  every class member. However, this chain of reasoning relies on allegations which
4  appear to concern Rule 23(a)'s requirement of typicality; and thus, in turn, seems
5  unavailing, because a class representative's claims "need not be substantially
6  identical" to the claims of the proposed class members to be typical. *Hanlon v.*
7  *Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by*
8  *Wal-Mart Stores Inc. v. Dukes*, 564 U.S. 338 (2011).

9       Because Defendant relies primarily on the *Santos I* complaint, the Court cannot
10 find that Defendant's resulting assumptions are reasonable. Defendant's amount in
11 controversy calculations appear to be "mere speculation and conjecture, with
12 unreasonable assumptions." *See Ibarra*, 775 F.3d at 1197. This alone forecloses
13 Defendant from satisfying its burden of establishing the amount in controversy by a
14 preponderance of the evidence. Accordingly, the Court lacks jurisdiction over this
15 matter under CAFA.

16 **V.    CONCLUSION**

17      For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion.

18      The Clerk of Court is **ORDERED** to remand this case to the state court from
19 which it was removed.

20      **IT IS SO ORDERED.**

21
22  Dated: July 9, 2024                            _____
23                                                 HONORABLE ANDRÉ BIROTTE JR.
                                                   UNITED STATES DISTRICT COURT JUDGE
24
25
26
27
28